May it please the court, counsel for the government, my name is Emilio Bandeiro and I represent Michael Dean Galloway in this matter. I would like to reserve one minute, please. I'll try to help you, but you keep track of your time and get counsel down. When it says one, that means you've got one minute left. Thank you. Mr. Galloway is asking this court to vacate the sentence imposed by the district court and remand to the district court with instructions to impose a sentence of 120 months. And the reasons for that are, we have three reasons. One is that the court committed significant procedural error below when they calculated the guidelines sentence. There are two sentences in this case, Galloway 1 and Galloway 2, if you will. Galloway 1, the court heard all the testimony from five witnesses. At the conclusion of that matter, the court imposed a sentence of 235 months and found that Mr. Galloway was eligible to be considered a career, an armed career criminal. Mr. Galloway then appealed. This court vacated that sentence pursuant to Grisel and sent it back to the district court for a new sentencing hearing. The court sent it back without limitation for the government to produce documents that could support their contention that Mr. Galloway was an armed career criminal. They conceded below that they could not produce such documents and then went on to, in the first sentencing memorandum, allow us how the count 1 and count 2 should be grouped and the sentences should be concurrent. Well, when we got back to after the government conferred with probation, they withdrew that memorandum, withdrew that concession, and proceeded to make, to essentially make new findings that went way beyond what. Well, let me cut to the chase at least, what I think is the chase for me, and that is to say the government got a good long sentence the first time around. They did. Once the ACCA comes out of the case, they are not going to get even close to that. Well, they're not going to get anything that's that long. At that point, what looks like it happened is they put in special offense characteristics that might have been available to them before but they hadn't put in, and they asked for consecutive whereas before concurrent was going to do the trick. And are you arguing that somehow it was impermissible for them to change their calculations because now the ACCA is out and they just want as long a sentence as they can possibly get? Is that the argument? I am, Your Honor, and I'm arguing that because the court in Galloway 1 had all of the information that was available to it, and there was no further, there was not a single fact that was different in Galloway 2 except for the fact that the government lost and we were back for resentencing. What difference does it make that the remand order from Galloway 1 basically says, and the government can put in anything additional it wants to? Well, I would argue that they could put in anything additional that they wanted to with respect to their contention that he was an armed career criminal. They went way beyond the scope of that remand and then put in information that actually they put in no information. What they did was come back and say these are the new calculations, but there was not a single fact that was different in the second sentencing from the first. The order itself didn't really put that constraint on the government. What's your basis or your theory as to why there was a constraint that the government couldn't propose a different calculation of the sentence? I'm sorry, Your Honor. I'm having a little trouble hearing. You indicated your theory was that on remand the government could only introduce new evidence that went to the ACCA issue. That's not what the order said. So I wanted to understand what your theory or basis was for saying the government was limited in that way. Well, Your Honor, I – my theory and my basis is that the Court ruled on one specific issue, and that this Court ruled on whether Mr. Galloway was an armed career criminal, and they sent it back without limitation on that issue. That's what I believe the order says. The order is not entirely clear to me. It may be clear to the Court, but it seems to be saying that without limitation to produce new documents to support their contention that he was an armed career criminal, and they didn't do that. They didn't do that at all. Now, there is some case law, and I don't think this case fits into it. There is some case law that occasionally the district judge, having been reversed, will be so mad that he'll take it out on the defendant. It doesn't appear that that's really what went on here, but is there something coming out of that case law that would be helpful here or not? Well, I'm sorry, Your Honor. I don't think that I can help the Court with any of that. But it seems to me that the Court had all the necessary information in Galloway I. They had the testimony of the witnesses about the gun. I'd like to step back and say that the calculation in Galloway II, from our perspective, was clearly erroneous. And it was erroneous because the Court made no findings in either Galloway I or Galloway II that the gun was used or potentially could be used to facilitate a felony. There was simply no finding by the Court on that matter. So the ---- Is there enough information in the PSR to support such a finding? No. Well, in Galloway II, yes. In Galloway I, no. Was there an objection to the PSR in Galloway II? There was no objection to the PSR, but there was an objection in court to the calculations. And I think that that satisfied ---- I don't think that ---- Well, what I'm after is there are two things. One is objection and sort of preserving the objection. But the other one is in the absence of an objection to what's in the PSR, I think the judge is entitled to rely on what's in there. You know, what's in there factually, I should say. Well, it would be my position that the judge is entitled to rely on that absent any objection in court. And there was an objection in court. The objection in court was that these did not qualify for an enhancement. But was there an objection as to the facts recited in the PSR? I'm sorry, Your Honor? Was there an objection as to the facts recited in the PSR? Not an objection as to the consequence, but an objection as to what the facts were. I think so. I think that I made that objection to the calculation. And I'd like to concede now that the objection to the calculation, including the two-level enhancement that the gun was stolen, was clearly incorrect on our part. It didn't matter that Mr. Galloway knew or did not know that the gun was stolen. The gun was stolen. Your focus is on the facilitating or potentially facilitating. The objection is facilitating or potentially facilitating. And it seems clear to me that potentially facilitating a felony when one has a short barrel shotgun in their hand is a meaningless standard. And it appears that he himself is the one who sawed it off, right? We have evidence to that effect. There is some evidence that Mr. Galloway sawed off the shotgun, yes. But the standard potentially facilitating a felony when one has a short barrel shotgun, it could mean anything. Consequently, in my view, it means nothing to say that it potentially facilitated. In fact, there was testimony by the person who stole the shotgun, Mr. Garrison, that when he came back to retrieve the shotgun, he thought that Mr. Galloway was going to give him back the shotgun in exchange for property that he had stolen from this killer. Right. So that certainly does not rise to a felony. Okay. Listen, you're down to 22 seconds. We'll bump it back up to a minute. Let's hear from the government, and then we'll give you a chance to respond. Thank you.  I'm going to please the Court. Good morning. My name is Frank Papagni. I'm the prosecutor responsible for this case. The summary that Judge Fletcher gave is pretty much what this case is all about. The ‑‑ I should make a point of saying that I cited the Carter case as a recent case since it was late March, that the opinion was given. I understand the court rules, so I'm not going to argue it, and I gave a copy to him my colleague, a friend, Mr. Vandiero, this morning. But the Carter case has some interesting language in how a judge looks at a sentencing and what needs to be discussed. Having said that, focusing on this particular case, the arguments that Mr. Vandiero has made regarding what the scope of review, if you will, was for Judge Hogan when the case came back to him after Griselle threw out the bird, too, and we conceded that, was not only the fact that we were able to offer more documents as to whether or not Mr. Galloway was an armed criminal. We couldn't do that after Shepard. Clearly, Shepard prohibited the documents we could do, so we conceded that he was no longer an armed criminal. But the remand also contained a citation to the Matthews case, and that's significant because I do the citation of Matthews, 278, Feb. 3, pages 885 through 886. I cite that in my brief, but pertinent to what you're considering this morning is that Matthews says on those pages, We hold that as a general matter, if a district court errs in sentencing, we will remand free sentencing on an open record, that is, without limitation on the evidence the district court may consider. In Matthews, this court went on to say, On remand, the district court generally should be free to consider any matters relevant to sentencing. Even those that may not have been raised at the first sentencing hearing as if it were sentencing de novo. And I cite to the Ponce case, 51, Feb. 3, at 826, and another citation. In other words, the cite the cites that are put in the Matthews case says the general rule is that a district court on remand may take any matter into account and may hear any evidence relevant to sentencing. So when Judge Hogan got the Galloway case back, as a trial judge who had sentenced Mr. Galloway the first time, as the judge who heard the government's evidence the first time regarding criminal accomplices, his ex-wife who was a criminal accomplice, the victim who Mr. Galloway ran over during a high-speed pursuit, all those factors Judge Hogan had already heard. And there's testimony, and I have some of that testimony in my excerpt of record. So now, because as this Court well knows, the sentencing grounds change. You know, since Galloway was sentenced in 2006, we've had a few sentencing cases since then. The Cardi case, most recently, was the one that had perhaps the biggest effect upon what we did in Galloway in this particular sentencing. So when the government came back before Judge Hogan, initially, as Mr. Vandiero pointed out, when I did the first sentencing memo, I said, well, you know, I guess it's going to be concurrent in sentences. And then sometimes this happens when you're a prosecutor or a judge. You get additional information that says, well, wait a second. We can actually do consecutive sentences under the guidelines, plus the 3584 rule, and a partial sentence, if you will. Could you not do consecutive sentences the first time around, or was that merely a discretionary decision? Could we have done it? Or rather, I should say, could Judge Hogan have done it? Judge Hogan could have done it, but let's face it. The sentence the first time around was 235. That was high end. I was asking for 262. I gave a long sentencing memo saying this guy is so dangerous for all the reasons I gave, from his attempted murder to threatening a grandfather and his granddaughter when he was being pursued by police. Judge Hogan considered my argument. Mr. Vandiero made a good counterargument. And Judge Hogan said, no, Mr. McFagney, I'm not granting you your one-level upward increase. But Judge Hogan did go high into that range. He went to 235, which, by the way, was the recommendation of probation office. I have no trouble, actually. I mean, I'll just tell you, put my cards right on the table. I think you've got ample evidence in the record to support the sentence and the enhancements that are here. My only hesitation is whether or not this remand on an open record idea permits the government to seek enhancements that it did not seek before, such as special offense characteristics. There's a Big Fat 0 in Galloway 1, and there's a Big Fat 6 the second time around, on essentially the same evidence. Oh, it is the same evidence, Judge. Yeah. Judge Fletcher, it is. I suppose the way to put it is this. The first time around, Mr. Galloway was clearly under the law of this circuit under Cunningham and Hunt, an armed career criminal. Judge Hogan thought a reasonable sentence, and he did consider 3553 factors, was 235 months, okay? The government sought more, defense sought less. Judge Hogan went with the probation office's high-end recommendation within the guidelines. The case comes back. Now, I looked at the remand, and of course, the remand says, Mr. Papagni, if the government can offer more evidence of choice in ACC, do it. Under Grisell, if you can do it, do it. I couldn't. So the next thing I looked to was the Matthews case. So how much – what can I do here? What can probation do? And the Matthews case, which I just cited to you and read to you, gave me and gave Judge Hogan, I would submit to you, Judge Fletcher, an open record, basically a sentencing de novo. So let's start all over again. At that point, I initially think, well, concurrent sentences probably is what we should do here, 120. I don't think I can do better. And then the probation came back, and I said, well, you know, I made a mistake. Looking at Guideline G, 5G1.2, I think it is, and also looking at the statute, we can do partially concurrent or partially consecutive sentences. And what's the total punishment? And quite frankly, as I say in the record, I say, well, I thank the senior probation officer because he did better legal research than I did. But once I saw his research and confirmed it, there was nothing that prohibited me from making that recommendation and supporting the probation office. And in fact, the Matthews case gave the probation officer that support. And because the plea agreement left us wide open to recommend whatever sentence we thought appropriate, I concurred with the probation office this time around at 188. And pertinent to your comment earlier about how Judge Hogan looked at the case, there was no consequence given to this defendant for his appeal. Judge Hogan went down from 235 to 188, still high into the guideline range like he did the first time around. And he went one step further because now, of course, as I said, the sentencing grounds have changed under our feet as this case has progressed through the system. In 2006, he didn't make many comments about the sentence he gave. He just denied my upward departure. And because of that, I'm going to make it clear. I said it before when I'm going to make it very clear. There is no evidence at all that I see here that this is a case where the district judge takes it out on the defendant on remand because he's unhappy about the appeal. This is not that case. But he did make a comment that I think helps this Court a lot. Because as mentioned in sentencing decisions and analysis done since this case, you look at the context. In fact, I put the word context in my appellate brief. And the context of what's going on here is Judge Hogan concludes his comments and Mr. Bandiero is doing his job. He says, well, wait a second, this guy doesn't have a very good record, which one could call an understatement. He then goes on further to say that he thinks it's significant in his sentencing that he's doing the 188, that this man has shown himself to be dangerous around firearms. And then as a parting comment to this Court to support his 188 sentence, he comments that he always takes it much more seriously when you have a defendant like this one who's pulled the trigger with a past conviction and he's attempted murder. So for those reasons, we believe there's this decision by Judge Hogan should be upheld and there's been no sentencing error. Let me ask you about the comments, the findings that the district court made. In 2006 sentence, he stepped through the 3553 factors pretty carefully. In the 2008 one, he makes the comment you just mentioned about Galloway's criminal record showed that he was dangerous around firearms and that he had previously fired a weapon. He made some comment that the same findings apply this time as they did in 2006. I don't know if that was referring to his 3553 factors. And then he also adopts the PSR. Is that enough for him to have complied with the 3553A findings requirement? I think it is the 3553 findings because of the context, the familiarity with the case. This case was not a particularly complicated case. This was the second time around for Judge Hogan. I think the weaker argument for me, quite frankly, is the one that Mr. Bandiero made, which is did Judge Hogan make specific factual findings as far as the enhancements were concerned. Judge Fletcher raised it with my colleague, Mr. Bandiero. Judge Hogan did not make those specific findings because he simply adopted those findings that were in the presentence report. And I've made my arguments in my brief saying, well, first of all, defense didn't make it specific enough under the Baker case to tell Judge Hogan, give him a heads up, that the stolen firearm and the connection to a felony were significant issues. But, clearly, the facts through testimony that was uncontradicted supports those findings. The presentence report, the second one, supported those findings when putting in these enhancements. The third thing is, of course, is that because the evidence is uncontradicted, Judge Hogan adopted in his statement the findings of fact and reasons for sentencing that he adopted the presentence report. And then lastly, of course, is that defense has not come forward with anything to attack those findings as being inaccurate. So we do have a clear record in that regard. So as far as the 3553 factors are concerned in your question, Judge, the answer is yes. I think in the context here we're fine on the 3553 factors. Whether or not there was a significant procedural error by Judge Hogan that Carde says that we have to look at, I would submit to you that there is not, but that's up to you folks to decide. Unless you have any other questions, I'm done. Thank you. Mr. Vangieri, would you like one minute? Yes, thank you, Your Honor. I think the Court, Judge Fletcher, you struck at what's at the heart of this matter for Mr. Galloway, and that is that Judge Hogan could have but did not make any enhancements in the first time, in the first sentence. Now, it turns out that he was going to impose a sentence of 235 months, and perhaps it was unnecessary for him to make those findings on the enhancement, but the fact is he didn't. The fact also is that the government did not ask for any enhancements, and probation did not ask for any enhancements. That's the first point. The second point is that Judge Hogan could have made count one and count two consecutive. The government, probation, and the Court, Judge Hogan, found that both count one and count two should run concurrent, and I think that they should be, they should live with that, with those decisions. Thank you, Your Honor. Thank both of you for good arguments, useful arguments. United States v. Galloway is now submitted for decision. The next case on the argument calendar this morning is Esty v. Hill. Thank you.
judges: Fletcher W. , Bea, Ikuta